# In the United States Court of Federal Claims

Case No. 10-432C
Filed:  February 8, 2011
TO BE PUBLISHED

*********************************************************

| | | |
|---|---|---|
| HI-TECH BED SYSTEMS, CORP., *Plaintiff,* | * * * | General Services Administration Federal Supply Schedule; contract administration claim versus bid protest claim; responsibility of agency contracting officer to ensure compliance of GSA FSS contracts; "in connection with" a procurement; protesting a term of a solicitation pre-award; Supplementation of the Administrative Record |
| v. | * * | |
| THE UNITED STATES OF AMERICA, *Defendant,* | * * * * | |
| and | * * | |
| KLN STEEL PRODUCTS CO., LLC, *Intervenor,* | * * * | |
| and | * * | |
| DEHLER MANUFACTURING CO., INC. *Intervenor.* | * * | |

*********************************************************

**Philip A. Nicholas**, Nicholas & Tangeman, LLC, Laramie, Wyoming, attorney of record for Plaintiff.

**Anna Bondurant Eley**, Department of Justice, Washington, D.C., for Defendant.

**Stephen M. Ryan**, McDermott Will & Emery LLP, Washington, D.C., for Intervenors.

**Amelia C. Moorstein**, law clerk.

## ORDER/OPINION

**BASKIR, Judge.**

   Plaintiff brings this post-award bid protest contesting a term in a solicitation that requires bidders be listed on the General Services Administration (GSA) Federal Supply Schedule (FSS).  Plaintiff failed to object to this term prior to award.  Since the awardees were properly listed on the FSS and Plaintiff waived its challenge to this term by not objecting to it before award, we **GRANT the Government's Motion to Dismiss.**

**I.      Background**

      A.      Factual Background

Hi-Tech Beds Systems, Corp. (Plaintiff) brought a post-award bid protest in this Court on July 7, 2010, protesting the award of two U.S. Army Corps of Engineers (Army) RFQs for steel beds as "furnishing and services in support of the Huntsville Centrally Managed UPH Furnishings Program for Ft. Leonard Wood..." AR3-4; *see also* AR2392. RFQ # W912DY-10-T-0075 (the "0075 RFQ") was issued by the Army on February 3, 2010, and RFQ # W912DY-10-T-0171 (the "0171 RFQ") was issued also by the Army on April 15, 2010. The 0171 RFQ was awarded to Dehler Manufacturing, Inc. (Dehler) and the 0075 RFQ was awarded to KLN Steel Products Company, LLC (KLN Steel). Plaintiff competed unsuccessfully for both contracts. Plaintiff asks that the Court find the Army award of the RFQs to Dehler and KLN Steel unreasonable, arbitrary, capricious, and against law and regulation.

The solicitations required that the steel beds be listed on GSA FSS. The RFQ also stated that the beds were to be made of "heavy 16 gauge minimum steel construction." In order to be listed on the GSA FSS, vendors must meet or exceed the GSA testing requirements. GSA does not enforce or police its testing requirements for Bunk Bed/Loft Bed Standard 3FNE 99-582C (8-27-2009) -- in other words, this is a self-certification process.

Plaintiff was previously determined by GSA as eligible to list its steel beds on the GSA FSS, as were the two awardees. Plaintiff states that its beds meet the testing requirements. Plaintiff believes it was the only bidder for the RFQs that met the actual requirements, so it should have been awarded the contracts. Plaintiff alleges the other companies produce their beds using lighter steel. Plaintiff asserts that because of the lighter steel used by its competitors, their beds do not comply with the actual requirements and are cheaper to produce.

      B.      Procedural Background

Plaintiff brought a pre-award agency-level protest contesting the 0171 RFQ and a post-award protest contesting the award of the 0075 RFQ, also at the agency level. Plaintiff filed its post-award bid protest in this Court on July 7, 2010. In its Complaint, Plaintiff asks for a declaration that award of GSA contracts to Dehler and KLN Steel to be listed on the FSS was unreasonable, arbitrary, capricious, and against law and regulation; a declaration that award of the Army contracts was unreasonable, arbitrary, capricious, and against law; an injunction against GSA preventing it from awarding contracts to vendors that do not meet the testing requirements; an injunction requiring GSA to verify vendors' self-certification; a declaration that Plaintiff's product was the only qualifying product; an order directing the award of the contracts to Plaintiff; and an

order directing GSA and the Army to terminate procurement of articles that have not been determined to have passed testing requirements. In other words, Plaintiff seeks by this bid protest to enforce the substantive aspects of the testing requirements of the GSA FSS.

During a preliminary scheduling conference held on July 12, 2010, the Court granted Dehler's and KLN Steel's Motion to Intervene and set a briefing schedule on Defendant's Motion to Dismiss and both parties' Motion for Judgment Upon the Administrative Record (AR). The Court also ordered that Defendant file both the AR that was in front of the Army Contracting Officer (CO) as well as documents related to the GSA FSS contracts.

On August 27, 2010, given the parties' uncertainty as to whether the AR would include GSA documents, the parties moved to amend the briefing schedule so that they would brief only the Motion to Dismiss. The Court granted this motion.

On October 21, 2010, Defendant moved to strike the declarations of Fred Meyer, Elva Miller, and Michael Shue which were filed with Plaintiff's Motion for Preliminary Injunction, as well as all portions of Plaintiff's Response to the Motion to Dismiss that were dependent on these affidavits. The Motion to Strike also requested that the Court strike all documents obtained from GSA and all portions of Plaintiff's response that relied upon these documents.

## II. Discussion

### A. Standard of Review

In considering a Motion to Dismiss, the Court must accept as true the Complaint's allegations of fact and construe the facts in the light most favorable to the Plaintiff. *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1367 (Fed. Cir. 2009). In "ruling on a motion to dismiss for lack of jurisdiction, the court is not confined to an examination of the complaint, but may take into account 'evidentiary matters outside the pleadings.'" *Thomas v. United States*, 34 Fed. Cl. 619, 621 (1995) (quoting *Indium Corp. Of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985)).

A Motion to Dismiss pursuant to the Rules of the U.S. Court of Federal Claims (RCFC) 12(b)(6) is appropriate when a plaintiff's alleged facts do not entitle him or her to a remedy. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Perez v. United States*, 156 F. 3d 1366, 1370 (Fed. Cir. 1998). To survive a Motion to Dismiss, a Complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, to survive a Rule 12(b)(6) motion to dismiss, a complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citation omitted). A complaint that sets forth facts that merely allow the Court to reasonably

infer the "possibility" that the plaintiff is entitled to relief, must be dismissed. *Id.* (citation omitted).

  B. Defendant's Motion to Strike

The Court cannot review either the affidavits or the GSA documents under its bid protest jurisdiction. In *Axiom Resource Mgmt., Inc. v. United States,* 564 F.3d 1375, 1379 (Fed. Cir. 2009), the U.S. Court of Appeals for the Federal Circuit held that, in bid protest cases before this Court, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court" (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)). The Federal Circuit emphasized that this Court was limited to review of the record that was actually before the agency in making its award decision, and that supplementation of that record should only occur in cases where "omission of extra-record evidence precludes effective judicial review." *Id* at 1380.

The challenged affidavits were created by Plaintiff after the Army made its award. Because these documents post-date the award, they could not have been part of the CO's award decision. Though the GSA documents were created pre-award, these documents were not part of the record considered by the CO in making the contract award. The Army CO only considered the responses to the RFQs in its decision-making process. The CO was not charged with reviewing each bidder's FSS contract with GSA. Since neither group of documents factored into the Army CO's award decision, the Court is precluded from reviewing them, and **Defendant's Motion to Strike is thereby GRANTED**.

  C. Claims Related to the GSA FSS Contracts

Plaintiff's claims related to the GSA FSS contracts are not "in connection with" the procurement phase of the Army contracts. Bid protest jurisdiction only extends to claims "in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). The Federal Circuit has defined this as involving "a stage of the federal contracting *acquisition* process" (emphasis added) including "the process for determining a need for property or services." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008). The procurement process ends with the contract completion and closeout. *Id.*

The GSA contracts have been in operation for between one and ten years. *See* Compl. ¶¶ 31-36 (referring to contracts issued in response to a September 14, 1999, solicitation); *see also* Compl. ¶¶ 3-4 (referring to contracts issued in response to a 2009 solicitation). These contracts, including the one with Plaintiff, have already been procured and awarded, and they have been in operation for a significant amount of time.

Plaintiff's claims are actually directed at GSA's method of administering their contracts. In oral argument, Plaintiff's counsel admitted that the core of his protest of the Army award involved the other vendors' noncompliance with the GSA contract terms. Tr. at 19. The GSA procurement phase is over and the contracts have entered the administration phase. The GSA contracts therefore cannot be "in connection with" the Army procurement.

Plaintiff argues that the GSA contract and the Army solicitations are integrated; in other words, the two contract solicitations are one and the same. Tr. at 13-14. Plaintiff argues that since it brought the Army solicitation to this Court as a claim in connection with a procurement, we also have jurisdiction to consider the GSA contracts that bidders must have entered into in order to qualify to bid on the Army RFQs. We disagree. The two agencies conducted two separate solicitations. As we stated previously, vendors entered into contracts with GSA between one and ten years before the Army published the two RFQs at issue. Also, each agency had its own separate purpose for contracting with the vendors: the GSA contracted with vendors to create a schedule for agencies to use when procuring products, while the Army contracted with vendors to obtain steel beds for practical use. The GSA and Army solicitations were two separate processes conducted at two separate times. If Plaintiff had a problem with the terms of the GSA solicitation -- i.e., the conformity with the testing requirements -- the time to raise this issue was prior to awards of that solicitation. The Army and GSA claims cannot be consolidated together as one bid protest.

Even if Plaintiff could show its claims were "in connection with" the GSA procurement, it could not establish standing to challenge that procurement because it was not prejudiced by awards to other contractors. For a party to have standing in a bid protest, the party must have been prejudiced. *See Bannum, Inc. v. United States,* 404 F.3d 1346, 1351 (Fed. Cir. 2005) (holding that, if the procuring agency's decision was made in violation of the applicable statutes, regulations, or procedures, then the court must "determine, as a factual matter, if the bid protester was prejudiced by that conduct"). Plaintiff was awarded a contract to list its steel beds on the GSA FSS. Because Plaintiff was awarded a GSA contract, it has not been prejudiced in any way by awards to other FSS vendors.

      D.     The Army Solicitations

The procurements that spurred this bid protest were the Army solicitations, since Plaintiff contested the awards to Intervenors of the 0171 RFQ and the 0075 RFQ. The Court must focus on these solicitations despite Plaintiff's insistence that the Court examine the GSA contracts.

During oral argument, Plaintiff's counsel stated that an adverse ruling on the motion to strike the GSA documents was tantamount to an adverse ruling on the protest itself. Not withstanding this concession, we discuss the merits of the protested Army award.

      i.      Plaintiff Waived the Opportunity to Protest the Term Requiring Bidders Be Listed on the GSA FSS

Inclusion on the GSA FSS was a term of the Army solicitations. Although Plaintiff filed a timely agency level protest of that requirement, it did not file a protest in this Court until after it lost the award. By waiting until the award phase to file here, Plaintiff has waived its opportunity to protest that term. In *Blue and Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007), the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."

This Court has applied *Blue and Gold* to prevent parties from raising post-hoc objections to a solicitation. *See Int'l Mgmt. Servs., Inc. v. United States,* 80 Fed Cl. 1 (2008) (Plaintiff waived objection to a term of a solicitation designating the procurement as a small business set aside by failing to object prior to the contract award); *Frazier v. United States,* 79 Fed. Cl. 148, 177 (2007) (noting that [t]he proper time to challenge the provisions of a prospectus is before bids are required to be submitted, in a pre-award bid protest"); *Benchmade Knife Co. v. United States,* 79 Fed. Cl. 731, 733 (finding that the protest "should have been raised before proposals were submitted"); *Masai Techs. Corp. v. United States,* 70 Fed. Cl. 433, 444 (2007) ("To the extent [the protestor] believed that the citizenship requirement [in the RFQ] was too stringent or otherwise improper, [the protestor] should have raised its objection with the Army prior to submitting its proposal").

      ii.      The Army is Not Charged with Enforcing the Terms of GSA Contracts

The Army and GSA are two separate agencies with two separate agendas. The GSA is charged with soliciting and awarding contracts to vendors permitting them to list products, in our case steel beds, on the GSA FSS. The Army is charged with issuing a solicitation for goods, obtaining bids and making awards for purchase based on those bids. The Army stated its criteria for award in the solicitation, and must adhere to the terms of the solicitation. Because the solicitation stated that a bidder's product must be listed on the GSA FSS, the Army was responsible for assuring that the product was listed on the FSS. The Army's responsibility, in respect to that requirement, ended at that point.

         iii.       Plaintiff's Claim That the Beds Do Not Comply With the Testing Requirements is a Matter of Contract Administration

Even if the Army could be charged with making certain the desired products complied with GSA's testing requirements, there is no way to know whether the beds that are delivered are compliant until the beds are actually delivered.  If the awardees did not deliver compliant beds, it is the Government's responsibility to take this issue up with them as a matter of contract administration and for possible breach of contract.  *See* 48 C.F.R. § 2.101 ("Termination for default means the exercise of the Government's right to completely or partially terminate a contract because of the contractor's actual or anticipated failure to perform its contractual obligations.")

## IV.  Conclusion

For the forgoing reasons, **Defendant's Motion to Dismiss is GRANTED**.  The clerk is directed to **enter judgment for the Defendant and DISMISS the Complaint**.  Parties are to bear their own costs.

    **IT IS SO ORDERED.**

                                            s/ Lawrence M. Baskir
                                             LAWRENCE M. BASKIR
                                                     Judge